## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**HOBY DALE HOGUE**,

Debtor.

Case No. **10-61143-11**

## MEMORANDUM OF DECISION

At Butte in said District this 22nd day of March, 2011.

Pending in this Chapter 11 case is confirmation of the Debtor's Chapter 11 Plan of Reorganization, filed January 7, 2011 (Docket No. 121) (hereinafter the "Plan"). The United States Trustee ("UST") filed an objection to confirmation on the grounds the Plan is not feasible under 11 U.S.C. § 1129(a)(11) because the Debtor has not shown he has the ability or projections of cash flow to make the monthly payments under the Plan. After a hearing on confirmation held after due notice at Billings on February 22, 2011, this Court took the matter under advisement after the conclusion of the parties' cases-in-chief. The Court has reviewed the Plan and UST's objection, the record and applicable law. For the reasons set forth below, the UST's objection is sustained and confirmation of Debtor's Plan will be denied. The Court finds that the Debtor has failed his burden of proof to show that his Plan is feasible as required under § 1129(a)(11).

This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Memorandum includes the Court's findings of fact and conclusions of law.

Debtor Hoby Dale Hogue ("Hogue" or "Debtor") appeared and testified at the

1

confirmation hearing represented by attorney Craig D. Martinson ("Martinson") of Billings. Debtor's spouse Lori Crowell ("Crowell") also testified.  The UST was represented by attorney Daniel P. McKay.  Debtor's Exhibits ("Ex.") 2 and 6 were admitted into evidence without objection.  Without objection the Court granted final approval of the Debtor's Amended Disclosure Statement (Dkt. 122) at the hearing.

The ballot report reflects that the creditors which submitted ballots in Class II (Chrysler Financial Services Americas) and Class IX (Southern California Pipe Trades Adm. Corp.) voted to accept Debtor's Plan.  Class VII ("American Express Bank, FSB") voted to reject the Plan. Thus, the Debtor has satisfied the requirement of 11 U.S.C. § 1129(a)(10) that at least one class that is impaired under the Plan has accepted the Plan.

### FACTS

Hogue owned a plumbing business in California and worked as a plumbing contractor there until he moved to Montana in 2007.  He has 30 years experience as plumber.  Hogue now lives in Big Timber, Montana.  He currently is employed at Williams Plumbing & Heating in Bozeman where he does plumbing work and develops estimates for bids for contracting jobs. His salary at Williams Plumbing is $5,124.99 per month.  He testified that he earns $780 per week net.

In 2007 Hogue purchased a meat processing plant in Big Timber which he owns as Big Timber Meats, Inc. ("Big Timber Meats"), which is now a S Corporation.  Big Timber Meats is in the business of custom-processing livestock and wild game during hunting season.  Hogue's spouse Crowell operates Big Timber Meats, and her salary is shown in the Debtor's cash flow, Ex. 6, as $1,733.33 per month.  Besides Crowell, Big Timber Meats has six full time employees.

Hogue filed a voluntary Chapter 13 petition on May 13, 2010.  He converted the case to Chapter 11 on August 9, 2010, and filed amended Schedules and a Statement of Financial Affairs ("SOFA") on August 3, 2010 (Dkt. 69), and again on December 9, 2010 (Dkt. 100).  He filed a further amended SOFA on December 23, 2010 (Dkt. 108).

The amended summary of Schedules now lists assets in the total amount of $845,671.81 and liabilities in the amount of $1,296,628.68.  Debtor's amended Schedule A lists real property valued at $825,000.00, and Debtor's equity in real property is $2,000[1].  Schedule B lists personal property in the amount of $20,671.81, including a $661 retainer paid to Debtor's attorneys. Secured claims listed on Schedule D total $933,178.63.  Schedule E lists a priority claim in the amount of $75,000 owed to the Internal Revenue Service.  Schedule F lists unsecured claims in the amount of $288,450.05.

Schedule I lists Debtor's monthly income as $5,124.99 from his wages, and a monthly net income of $3,226.12.  His spouse Crowell's monthly income from Big Timber Meats is listed in the net amount of $1,355.46, and the total average monthly income on Schedule I is $4,581.58. Schedule J lists Debtor's monthly expenses, including Crowell's monthly expenses.  The total monthly expenses on Schedule J is $4,581.58, leaving a net monthly loss of $130.43.  Debtor's Dkt. 69 includes Debtor's Form B22B, which lists the current monthly income for Debtor and Crowell in the amount of $6,490.33.

Debtor's SOFA at question 1 lists his income for the years 2008, 2009, and 2010 as of 8/8/2010.  The 2008 income is stated as a loss of $5,273.  His 2009 income is listed as

---

[1]Amended Schedule A now lists two parcels.  The first parcel is valued at $650,000 but is encumbered by a secured claim in the amount of $648,000.70.  The second parcel has a value of $175,000 encumbered by a secured claim in the amount of $257,890.61.

3

$37,417.28 from his employment at Williams Plumbing, Heating & Utilities Inc., plus gross income from Big Timber Meats in the amount of $2,160, for a total 2009 income of $39,577.28. Debtor's income through 8/8/2010 is stated as $37,166.20.

The claims register in this case lists proofs of claims totaling $1,386,662.24, including unsecured claims in the total amount of $143,609.92, secured claims in the amount of $1,168,283.63, and Proof of Claim No. 4 filed by the IRS asserting a priority claim for taxes, penalties and interest in the amount of $74,768.69 for tax years 2006, 2007, 2008, and 2009.

Debtor filed his Plan and Disclosure Statement on January 7, 2011.  The Disclosure Statement states Hogue's salary at page 5 as $5,124.99 per month at Williams Plumbing, and Crowell's salary of $10.00 per hour at Big Timber Meats.  It states that Hogue is considering doing additional work as an independent plumber to supplement his salary and, if he does, he anticipates additional income "but that amount has not yet been determined."

At page 6 the Disclosure Statement states that Crowell contributed $47,000 of her own money into Big Timber Meats for operating funding, and that since Hogue purchased Big Timber Meats no significant changes or modifications have occurred in its operation.  It states that cash flow at Big Timber Meats was not sufficient to make payments to the obligations incurred with Hogue's purchase of Big Timber Meats due to "unforeseen economic downturn and the lack of experienced employees."  At page 7 the Disclosure Statement states that the Debtor and Crowell are seeking to reduce employment costs, expand operations, and keep costs as low as possible.

Page 9 of the Disclosure Statement estimates Debtor's administrative expenses in the total amount of $25,325, consisting of $325 in UST quarterly fees, and $25,000 estimated professional fees which are either to be paid in full on the effective date of the Plan, or according

4

to separate written agreement or court order if not approved by the effective date of the Plan. Debtor has not filed an application for professional fees for his attorney Martinson, and no fees have been awarded.

The Disclosure Statement classifies claims and provides for their treatment under the Plan. At page 14 it states that the Plan will be funded by Debtor's wages and from income from Big Timber Meats. The attachments to the Disclosure Statement include an Exhibit B listing Debtor's assets in the total amount of $195,671.81, including $1,684.81 in cash ($20) and checking account balances ($73.23 and $1,591.58). Hogue testified that Ex. G to the Disclosure Statement shows an ending cash balance for the first five months after confirmation, after payment of expenses, in the amount of $703.42 per month.

Debtor's Plan sets forth ten classes of claims. Administrative claims are treated at Article III, which states that administrative claims will be paid in full in cash on the effective date of the Plan, or on other terms agreed upon between the Debtor and the holder of the administrative claim. No evidence exists in the record of any agreement between Debtor and his attorney Martinson for anything other than payment in full of Martinson's fees and costs, and Martinson has not filed an application for compensation.

Article IV of the Plan sets forth the treatment of claims. Classes 4, 5 and 6 secured claims are to be satisfied with the surrender of security.

Class 1 priority claim of the IRS is to be paid over 60 months "with the statutory rates of interest . . . through level monthly payments." No payment amount is provided. Given the allowed amount of the IRS's Claim 4, $74,768.69, equal payments over 60 months would be $1,246.15 per month, not including any interest. Class 2, Chrysler Financial Services, is

5

provided with treatment consisting of payment over 5 years with monthly payments of $193.96. Class 3, Bankcda's secured claim, is provided with treatment consisting of payment over 25 years with monthly payments of $1,447.96. Class 7 (unsecured claims), is provided with treatment consisting of payment over 10 years with monthly payments of $109.63. Class 8 (Bankcda's unsecured claim) is provided with treatment consisting of payment over 10 years with monthly payments of $505.02. Class 9, unsecured claim of Southern California Pipe Trades et al., is provided with treatment consisting of payment over 10 years with monthly payments of $184.04.

The total of the monthly payments to classes of creditors specified in Article III of the Plan is $2,440.61. Adding the $1,246.15 payment to the IRS brings a total monthly payment of $3,686.76[2], without including any interest to the IRS, and not including any payment of Debtor's administrative expenses. In order to make the plan payments Debtor relies on the income from his wages from Williams Plumbing, his prospective wages working as a plumber independently, and income from Big Timber Meats. Hogue did not testify specifically as to any amount he expects to earn by working on the side as a plumber, and he offered no written projections. However, he testified that he can begin extra plumbing work within the next month and get new business for Big Timber Meats, which will be enough for his plan payments. Crowell agreed and testified that, with their family income and decreasing their expenses and expenses of Big Timber Meats, they will be able to make the payments to creditors under the Plan beginning 30 days after confirmation.

---

[2]Hogue testified, under cross examination, that the total plan payments due under the Plan were at least $3,640 per month beginning 30 days after confirmation.

6

Debtor's Ex. 6 sets forth the Debtor's and Crowell's combined monthly income for September 2010 through January 2011, and their total expenses for the same months. Hogue testified that Ex. 6 was based on his monthly operating reports ("MOR"). Crowell testified that Ex. 6 accurately reflects her and Debtor's household income and expenses. The monthly ending cash balances for those months shown on Ex. 6 are: $2,217.30, $1,806.30, ($2,111.70), $651.30, and $215.30, respectively, for a total positive cash for those five months of $2,778.20. According to Ex. 6, not once in any of those months did the Debtor's produce enough cash to pay even the $2,440.61 in payments required for the classes of creditors provided under the Plan, Article III.

Hogue testified that Ex. 6 includes one-time expenses for trips, tires, and business supplies which would not be repeated, and that the ending cash shown should be higher. Under cross examination Hogue testified that adjusting Ex. 6 for the one-time increases for transportation and business supplies would increase his average monthly ending cash to $1,200, which remains less than half of the $2,440.61 required to make plan payments to classes of claims.

Debtor's Ex. 2 is a statement of revenue and expenses for Big Timber Meats for the 12-month period ending December 31, 2010. Ex. 2 shows a net ordinary income loss of ($16,910.55) on sales of $331,642.33. That loss includes a depreciation charge of $20,116.00. An additional loss from the disposition of equipment increased the net income loss to ($19,484.55).

The largest cost of goods sold component on Ex. 2 is labor and payroll taxes stated in the amount of $178,378.26. Crowell testified that Big Timber Meats intends to laid off its highest

7

paid employee to reduce its employment expense by $10,000 per year, if the Plan is confirmed. Crowell testified that they continue to cut back their employee hours, and that they can decrease another $2,000 by decreasing the remaining employees' hourly wages.  Ex. 2 states professional fees in the amount of $12,658.82.  Crowell testified that $5,200 of that amount was for professional fees paid to Martinson which will not recur.  In all, Crowell testified that they can increase their 2011 income from Big Timber Meats to $40,000, leaving $30,000 net after taxes and $2,500 to contribute to Debtor's Plan payment.

On the income side Crowell testified that Big Timber Meats was expecting an increase in its business from a state licensed buffalo hunt, but that hunt was stopped by the governor and no business from that will be forthcoming.  Otherwise, Crowell testified that Big Timber Meats expects its next increase in business after calving season with business from the Gallatin County Fair, followed by hunting season.

Crowell testified on redirect examination that the Debtor's MOR for January 2011 is accurate, and that the cash on hand figure on that MOR of $3,558.21 is accurate.

## DISCUSSION

The UST's objection to confirmation is that Debtor's Plan is not feasible.  The feasibility test is set forth at § 1129(a)(11) which requires that:  "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan."  *In re Harbin*, 486 F.3d 510, 517 (9th Cir. 2007); *Prudential Ins. Co. of America v. Monnier Brothers (In re Monnier Brothers)*, 755 F.2d 1336, 1441 (8th Cir. 1985); *In re Roberts Rocky Mountain Equip. Co., Inc.*, 76 B.R. 784, 790 (Bankr. D. Mont. 1987).  The Ninth Circuit BAP has defined feasibility as a

8

factual determination, and "as whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Jorgensen*, 66 B.R. 104, 108 (9th Cir. BAP 1986), citing *In re Clarkson*, 767 F.2d 417 (8th Cir. 1985); *see also In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 657 (9th Cir. 1997).

Debtors bear the burden of establishing the feasibility of their plans by a preponderance of the evidence. *In re Hungerford*, 19 Mont. B.R. 103, 120, 2001 WL 36211305, *11 (Bankr. D. Montana), quoting *In re Thomas*, 243 F.3d 959, 963 (8th Cir. 2001); *see also In re Euerle Farms, Inc.*, 861 F.2d 1089, 1091-92 (8th Cir. 1988). The Court has a duty under § 1129(a)(11) to protect creditors against "visionary schemes." *Id.*; *In the Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985). While a reorganization plan's success need not be guaranteed, the Court cannot confirm a plan unless it has at least a reasonable chance of success. *Hungerford*, 19 Mont. B.R. at 120, quoting *Thomas*, 243 F.3d at 963; *Monnier Brothers*, 755 F.2d at 1341.

The only evidence in the record that Debtor's Plan is feasible is the testimony of Hogue and Crowell that they will be able to make plan payments, which exceed the sum of $3,686.72 calculated by the Court, within 30 days of confirmation. However, they offered no written income projections of Hogue's proposed sideline work as a plumber, and their testimony contradicts their own exhibits.

The Court notes that the $3,686.72 plan payment calculated by the Court based on the Plan and testimony at the confirmation hearing, is understated. That figure includes a payment to the IRS which is not specified in the Plan, but which the Court calculates at $1,246.15 based on the IRS's allowed claim, not including interest. The Plan's treatment of the IRS at page 3, Article IV, Class 1, specifies that the IRS's priority claim will be paid "with the statutory rates of

interest." Debtor did not offer any evidence on the amount of interest payable, but the Plan requires it and therefore the $3,686.72 plan payment is understated.

The Plan payment is further understated because it does not include the UST's fees, which must be paid under Article III, and does not pay anything for their attorney's fees which, when allowed, also would be an administrative expense claim which must be paid in full either on the effective date of the Plan or on other agreed terms. The record has no evidence of other agreed terms to pay Martinson, so under the Plan they must be payable on the effective date. No application for compensation has been filed by Martinson. The approved Disclosure Statement at page 9 puts the amount of administrative claims due on the effective date of the Plan as $25,325.

Debtor's January 2011 MOR shows insufficient cash on hand ($3,558.21) to pay even the understated $3,686.72 Plan payment. Hogue and Crowell testified that they can make up the difference by increasing Hogue's income as a plumber and cutting expenses at Big Timber Meats. However, their testimony is contradicted by Debtor's own exhibits, and they did not offer into evidence any written projections showing that Debtor has the ability to make the plan payments.

Debtor's Ex. G attached to the Disclosure Statement shows ending cash available in the first 6 months in the amount of $703.42. Ex. 6 shows a 5-month total cash flow balance of $2,778.20, or $555.64 per month. Ex. 2 shows a net loss for Big Timber Meats for 2010 of $19,484.55. These are the Debtor's own exhibits, and both Hogue and Crowell testified that they are true and accurate before testifying how the expenses shown on Ex. 2 and 6 are overstated. Hogue testified that he can increase his income, but he gave no detail of how much.

10

Debtor has the burden of proof. *Hungerford*, 19 Mont. B.R. at 120, 2001 WL 36211305 at *11; *Thomas*, 243 F.3d at 963; *Euerle Farms*, 861 F.2d at 1091-92. Based on the Debtor's exhibits, and lack of any evidence or income projections showing additional income from plumbing and meat processing, the Court finds that Debtor has failed his burden of proof to show by a preponderance of the evidence that his Plan is feasible.

Debtor's Plan is a visionary plan, not supported by the exhibits or by the Debtor's wishful thinking. Crowell testified that she can turn around Big Timber Meats from a $19,484.55 loss to a $40,000 profit and $30,000 net in one year by laying off employees and cutting wages. The Disclosure Statement at page 6 explains that part of Big Timber Meats' failure to make payments to its secured creditors was caused by "lack of experienced employees." Debtor offered no evidence to support a finding that layoffs and cutting wages will cure that factor.

Debtor was unable to offer any prospect in the near term for an increase in sales for Big Timber Meats. The evidence shows that its income from Fall hunting season is half a year away. Income from the Gallatin County Fair is about three months in the future. The spring buffalo hunt which Crowell testified they were expecting to increase business was cancelled. There simply is no credible evidence in the record for the Court to find otherwise than that Big Timber Meats will continue its performance shown by Ex. 2.

If the Court did accept Debtor's and Crowell's testimony, and disregarded Debtor's own Ex. 2 and 6, Debtor still would fail his burden to show his Plan is feasible. Hogue testified that his net ending cash per month is actually $1,200, notwithstanding Ex. 6 and his Disclosure Statement's Ex. G. Crowell testified that they can turn Big Timber Meats 2010 loss shown by Ex. 2 into a net $30,000 gain, or $2,500 per month. Those two amounts total $3,700, which is

less than $14 more than the $3,686.72 plan payments calculated above. That $14, under Debtor's

rosiest scenario, has not been shown by the Debtor to be feasible to pay the interest on the IRS's

priority claim, which is required under the Plan at Article IV, Class 1, but has not been

quantified[3]. Neither does the evidence show that the $14 monthly surplus is sufficient to pay

Martinson's attorney's fee or the UST fee. Accordingly, the Court concludes that the Plan is not

feasible.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtor's Chapter 11 Plan is a core proceeding under 18 U.S.C. § 157(b)(2)(L).

3. Debtor failed his burden of proof to show that his Plan is feasible as required under 11 U.S.C. § 1129(a)(11).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above

sustaining the UST's objection (Dkt. 135) and denying confirmation of Debtor's Chapter 11 Plan

of Reorganization (Dkt. 121).

BY THE COURT

_Ralph B Kirscher_

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

---

[3]Since Debtor has the burden of proving feasibility, the lack of evidence on the amount of interest owing on the IRS's priority claim weighs against the Debtor.

12

13